| Case No. | CR 07-967 PSG | Date | May 26, 2011 |
|---|---|---|---|
| Title | United States v. Terry Lee Franklin | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge | | |
|---|---|---|---|
| Wendy K. Hernandez | Not Present | n/a |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:** (In Chambers) Order Denying Defendant Terry Lee Franklin's Motion to Dismiss the Indictment for Post-Indictment Delay

Pending before the Court is Defendant Terry Lee Franklin's Motion to Dismiss the Indictment for Post-Indictment Delay. On May 16, 2011 and May 24, 2011, the Court heard testimony and argument on the matter. After considering the moving and opposing papers, the testimony at the May 16, 2011 evidentiary hearing, and the arguments made by counsel, the Court DENIES Franklin's Motion to Dismiss.

I.   Background

On September 18, 2007, Terry Lee Franklin ("Franklin" or the "Defendant") was indicted on three counts related to the possession and use of a fraudulent passport. Specifically, the Indictment charges Franklin with obtaining, using and possessing a passport containing his photograph, but the name and information of Christian Blair Bishop, Franklin's cousin. *See Anderson Suppression Decl.* ¶¶ 3-4. Special Agent Charles Garrett Anderson, as a Special Agent employed by the United States Department of State Diplomatic Security Service, was assigned to the case and attempted to locate and arrest Franklin between December 2006 and March 2009. *Id.* ¶¶ 2-12. Special Agent Anderson and the United States Department of State were unable to locate Franklin. Then, on December 7, 2010, Franklin was arrested by "local authorities when an officer stopped to advise Mr. Franklin to leave a public park that had closed for the evening." *Mot.* 4:24-5:1. The officer discovered the federal warrant for Franklin's arrest after running his name through a computer system. *Bell Decl.* ¶ 2. A trial date of February 1,

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#40

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 07-967 PSG | Date | May 26, 2011 |
|---|---|---|---|
| Title | United States v. Terry Lee Franklin | | |

2011, was set for Franklin's trial, but a series of stipulated continuances pushed the trial date back until May 24, 2011. For purposes of the pending Motion, the Court notes that a period of 3 years, 2 months and 19 days elapsed between the filing of the Indictment and Franklin's arrest, and a period of 3 years, 4 months and 14 days elapsed between the filing of the Indictment and the date originally set for Franklin's trial. The question before the Court is whether Franklin's Sixth Amendment speedy trial rights were violated by the lapse in time between Indictment and trial.

II.     Discussion

   A.     The Sixth Amendment and Post-Indictment Delay

"The Sixth Amendment guarantees that in all criminal prosecutions the accused shall enjoy the right to a speedy trial." *Doggett v. United States,* 505 U.S. 647, 651, 112 S. Ct. 2686, 2690, 120 L. Ed. 2d 520 (1992). Speedy trial challenges are subject to a four part inquiry governed by *Barker v. Wingo,* 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1971). The four factors are: "(1) whether delay before trial was uncommonly long, (2) whether the government or the criminal defendant is more to blame for that delay, (3) whether, in due course, the defendant asserted his right to a speedy trial, and (4) whether he suffered prejudice" because of the delay. *Doggett,* 505 U.S. at 651; *United States v. Mendoza*, 530 F.3d 758, 762 (9th Cir. 2008).

The speedy trial inquiry is a two-step process. First, the court considers whether the delay "passes a threshold point of 'presumptively prejudicial' delay." *See United States v. Beamon,* 992 F.2d 1009, 1012 (9th Cir. 1993) (citing *Doggett,* 505 U.S. at 652). Most courts generally find post-accusation delay presumptively prejudicial if it approaches one year. *See Doggett,* 505 U.S. at 652, n.1. The Ninth Circuit has held that even "a six-month delay constitutes a 'borderline case.'" *United States v. Lam,* 251 F.3d 852, 856 (9th Cir. 2001) (quoting *United States v. Valentine,* 783 F.2d 1413, 1417 (9th Cir. 1986)).

If the delay passes this threshold, "the court considers the extent to which the delay exceeds the threshold point in light of the degree of diligence by the government and acquiescence by the defendant to determine whether sufficient prejudice exists to warrant relief." *Beamon,* 992 F.2d at 1012 (citing *Doggett,* 505 U.S. at 650-56). "'[N]one of the four factors . . . [is] either a necessary or sufficient condition to the finding of a deprivation of the right of speedy

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#40**

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 07-967 PSG | Date | May 26, 2011 |
|---|---|---|---|
| Title | United States v. Terry Lee Franklin | | |

trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.'" *Lam,* 251 F.3d at 856 (quoting *Barker,* 407 U.S. at 533).

>   B.   Whether the Thirty-Nine Month Delay Between Indictment and Trial Violated Franklin's Sixth Amendment Right to a Speedy Trial
>
>   1.   Length of Delay

Franklin seeks to dismiss the Indictment on the basis of the 39 month delay between his indictment in September of 2007 and his scheduled trial date in May of 2011. As conceded by the Government, a delay of more than three years is long enough to necessitate a speedy trial inquiry. *See Opp'n* 7:3-7 ("The government does not dispute that the length of time between defendant's indictment and the scheduled 'time of trial' requires an analysis of the other three [*Barker*] factors."). *See Doggett*, 505 U.S. at 652, n.1 (a delay of approximately one year is generally sufficient to trigger a full inquiry).

>   2.   Reason for Delay

The second factor the court must evaluate is "the reason the government assigns to justify the delay." *Barker,* 407 U.S. at 531; *see also McNeely v. Blanas,* 336 F.3d 822, 827 (9th Cir. 2003) ("the prosecution bears the burden of explaining pretrial delays"). In *Barker,* the Court explained that "different weights should be assigned to different reasons" for delay. *Barker,* 407 U.S. at 531. A "valid reason," such as a missing witness, will justify an appropriate delay. *Id.* A "deliberate attempt" to delay a criminal defendant's trial, by contrast, should be "weighted heavily against the government." *Id.* A "neutral reason" such as negligence or overcrowded courts should be "weighted less heavily but nevertheless considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.; see also United States v. Gregory,* 322 F.3d 1157, 1162 (9th Cir. 2003) ("noting that "[t]he government's negligence, which is the reason for the delay, weighs in Gregory's favor"); *Beamon,* 992 F.2d at 1013 (accepting the district court's finding that "the government did not act with appropriate diligence in pursuing [the defendants]").

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#40

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 07-967 PSG | Date | May 26, 2011 |
|---|---|---|---|
| Title | United States v. Terry Lee Franklin | | |

If, on the other hand, the delay is caused by the defendant, this factor must be weighted against him. *See Lam*, 251 F.3d at 857 (holding that this factor weighed "heavily" against the defendant because "the reason for the delay . . . rested squarely on the shoulders of [the defendant's] court-appointed trial counsel"); *see also Aguirre*, 994 F.2d at 1457 (weighing this factor against the defendant based on the district court's conclusion that the government diligently searched for the defendant before the ultimate arrest).

The bulk of Franklin's Motion rests on his argument that the Government was negligent in its pre-arrest attempt to locate him. *See Reply* 3:19-21 ("the government's failure to bring Mr. Franklin to trial . . . was not the product of mere negligence, but surprising incompetence"). In response, the Government submitted the declaration of Special Agent Charles Garrett Anderson, the agent assigned to the Franklin case from December 2006 to March 2009. In his attempt to find Franklin, Special Agent Anderson "interviewed the true Christian Bishop and his mother Shaunn Carter," who told him that "they had no idea where []Franklin was then living." *Anderson Decl.* ¶ 3. After the indictment was filed in September 2007, Special Agent Anderson "visited the last known address [he] had for him from []DMV records . . . once every two months," which was in Rialto, California. *Id.* ¶ 5. Until early 2009, Special Agent Anderson "went to the neighborhood of that last known address once every three to five months" in an attempt to find Franklin. *Id.*

In the course of his investigation, Special Agent Anderson met with Franklin's father, where he identified himself as a special agent, gave Franklin's father his business card, and told him that he "needed to speak to his son . . . and that it was urgent." *Id.* ¶ 6. Franklin's father told Special Agent Anderson that his son was living somewhere in Long Beach, but that he did not know where and did not know how to contact him.[1] *Id.* Special Agent Anderson had similar contact with the actual Christian Bishop and informed Bishop that he needed to speak with Franklin right away. *Id.* ¶ 10. Special Agent Anderson also had contact with the FBI, which raided Franklin's father's house in Rialto and informed Special Agent Anderson that no one by the name of Terry Lee Franklin or Christian Bishop was found there during the raid. *Id.* ¶ 9. Finally, Special Agent Anderson also visited "other addresses where [he] had reason to believe

---

[1] At the May 16, 2011 hearing on Defendant's Motion to Dismiss the Indictment, Franklin's father testified that he did not remember speaking to Special Agent Anderson. *5/16 Transcript* 51:5-52:16. The Court has no reason to doubt Special Agent Anderson's account of his investigation.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#40

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 07-967 PSG | Date | May 26, 2011 |
|---|---|---|---|
| Title | United States v. Terry Lee Franklin | | |

[]Franklin might be located," and ran "a credit report and records searches online," but was unable to locate Franklin. In March 2009, 21 months before Franklin was arrested, Special Agent Anderson was "reassigned to a post in Monterrey, Mexico." *Id.* ¶ 12. The Government does not provide any account of its attempt to locate Franklin after Special Agent Anderson's reassignment.

For the time period extending from before the Indictment was filed and when Special Agent Anderson was reassigned, the Court concludes that the Government's search for Franklin was diligent. The Government visited Franklin's address on file with the DMV, met with Franklin's father and informed him that he needed to speak with Franklin right away, met with Christian Bishop and told him the same thing, conducted surveillance in and around Franklin's last known address, ran a credit report and records searches, and even pursued leads leading to separate addresses where Franklin might be located. *See Anderson Decl.* ¶¶ 1-11. This was diligent. However, the Government's inability to supply any information on its efforts to locate Mr. Franklin following Special Agent Anderson's reassignment leads to the conclusion that little or nothing was done after March of 2009 aside from entering the outstanding warrant into a central database. *See 5/16 Transcript* 6:23-24. The inescapable conclusion is that the Government's efforts for this 21-month time period were negligent. *See United States v. Mendoza*, 530 F.3d 758, 764 (9th Cir. 2008) (holding that "merely entering [an] arrest warrant into the law enforcement database" was not enough for a non-negligent attempt to locate the defendant). While the Government diligently pursued Franklin until March of 2009, the Government did not do so from March of 2009 until Franklin's arrest in December of 2010. *See United States v. Martin*, No. CR 93-577 SBA, 1997 WL 578628, at *6-7 (N.D. Cal. Sept. 5, 1997) (weighing this factor against the government where the "bulk" of the delay was due to negligence). Thus, this factor weighs in favor of Franklin, although it is not weighted heavily in his favor because there is no evidence of a deliberate attempt to delay Franklin's trial.[2] *See*

---

[2] Franklin also contends that the Court should count the nine month period between Franklin's arrest on December 6, 2006 and the Indictment on September 18, 2007 for purposes of this Sixth Amendment analysis. *See Mot.* 4:15-16. The Court recognizes that there is authority for the proposition that a court can consider pre-indictment delay in determining "how heavily post-indictment delay weighs against the Government," *United States v. Watson*, 599 F.2d 1149, 1157 (2d Cir. 1979), but the Court notes that "[u]nder the Sixth Amendment, delay is [generally] measured from the time of the indictment to the time of trial," *United States v. Gregory*, 322 F.3d 1157, 1162 (9th Cir. 2003) (quotations omitted).

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#40

CRIMINAL MINUTES - GENERAL

| Case No. | CR 07-967 PSG | Date | May 26, 2011 |
|---|---|---|---|
| Title | United States v. Terry Lee Franklin | | |

*Barker*, 407 U.S. at 531; *see also Doggett*, 505 U.S. at 656 (the obligation to pursue a defendant "with reasonable diligence [extends] from his indictment to his arrest"); *Mendoza*, 530 F.3d at 763 ("After Doggett, the government was required to . . . continue to actively attempt to bring him to trial").

### 3. Franklin's Assertion of His Right to a Speedy Trial

Franklin never asserted his speedy trial rights until April 18, 2011, over five months into the pre-trial phrase of the proceedings against him. Moreover, Franklin did so only after seeking three separate continuances of the original February 1, 2011 trial date. *See* Dkt. 19; Dkt. 31; Dkt. 35. Franklin's failure to assert his speedy trial rights until after seeking "numerous continuances," leads to the conclusion that this factor does not weigh in favor of Franklin nor the Government. *See Mendoza*, 530 F.3d at 764 ("Because Mendoza caused this delay before his assertion of his speedy trial rights, this factor does not weigh in favor of Mendoza nor in favor of the Government.").

### 4. Whether Franklin Has Suffered Prejudice as a Result of the Delay

Typically, a defendant must show that he has suffered actual prejudice as a result of post-indictment delay. *See Doggett,* 505 U.S. at 651. The amount of prejudice a defendant must show, however diminishes as the length of delay increases. In fact, "[n]o showing of prejudice is required when the delay is great and attributable to the government." *United States v. Shell*, 974 F.2d 1035, 1036 (9th Cir. 1992) (citing *Doggett*, 505 U.S. at 655-56) (noting that "affirmative proof of particularized prejudice is not essential to every speedy trial claim . . . excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify")). If the government "has been negligent and the delay does not far exceed the minimum time required to trigger the full *Barker* inquiry, [however,] '[the court] must consider the amount of delay in relation to particularized prejudice.'" *Gregory,* 322 F.3d at 1163, (citing *Beamon,* 992 F.2d at 1014). "In negligence cases ... [the court's] concern for substantiating prejudice diminishes as delay mounts." *Beamon,* 992 F.2d at 1013.

Where a demonstration of particularized prejudice is required, it "can be shown in three ways: oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the accused's defense will be impaired." *Id.* at 1014 (citing *Doggett,* 505 U.S. at 654). The Supreme Court has noted that impairment of an accused's defense is "the most serious [of the

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#40**

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 07-967 PSG | Date | May 26, 2011 |
|---|---|---|---|
| Title | United States v. Terry Lee Franklin | | |

three grounds for prejudice] . . . because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker,* 407 U.S. at 532.

In evaluating whether an accused's defense has been impaired by delay, a court examines "prejudice caused by the delay that triggered the *Barker* inquiry, not simply any prejudice that may have occurred before the trial date but [that is] unrelated to the fact of the delay itself." *Gregory,* 322 F.3d at 1163; *see also Barker,* 407 U.S. at 534 ("[T]here is no claim that any of Barker's witnesses died or otherwise became unavailable *owing to the delay"* (emphasis added)). Moreover, the prejudice suffered must not merely be speculative. *See United States v. Loud Hawk,* 474 U.S. 302, 315, 106 S. Ct. 648, 88 L. Ed. 2d 640 (1986) (a "possibility of prejudice is not sufficient to support" a finding that speedy trial rights have been violated); *Gregory,* 322 F.3d at 1164 (defendant's claim that a higher sentence might be imposed upon conviction as a result of a delay did not satisfy the actual prejudice requirement because "any sentencing prejudice that Gregory might suffer is speculative rather than actual"); *Lam,* 251 F.3d 852, 860 (9th Cir. 2001) ("Lam cannot credibly point to any specific damage to his defense stemming from the delay in his trial . . . Lam's contentions regarding alleged defects in witness testimony or lost evidence amount at most to speculation and fail to demonstrate any actual prejudice to his defense"); *Beamon,* 992 F.2d at 1014 ("Beamon and McMillin argue that their defense was prejudiced because they had a better chance of negotiating a favorable resolution of the case before the time they were arrested . . . Whether the prosecutor would have agreed to a lower sentence, or the court would have approved it, without the delay is speculation. For this reason, there is only the possibility of prejudice, and that is insufficient in the Sixth Amendment context").

In this case, the length and reasons for delay do not excuse Franklin from showing actual prejudice. Twenty-one months of the delay in bringing Franklin to trial is attributable to the Government's negligence. While this amount of time is not excused, it is not so "great" that Franklin's need to show actual, non-speculative, prejudice is obviated. *Cf. Shell*, 974 F.2d at 1036 (holding that a five or eight year delay attributable to the government was "great" and created a "strong presumption of prejudice" that the government had the burden to rebut). Even if the Court considered the entire time from Indictment to the original trial date—approximately three and a half years—that time is still not so great as to eliminate the need to show some

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#40**

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 07-967 PSG | Date | May 26, 2011 |
|---|---|---|---|
| Title | United States v. Terry Lee Franklin | | |

prejudice, but it does reduce the amount of particularized prejudice that Franklin must show.[3] *See Beamon,* 992 F.2d at 1013 (the need to show prejudice diminishes as delay increases); *see also Shell*, 974 F.2d at 1036 (identifying a five or eight year delay as presumptively prejudicial).

On May 16, 2011, the Court held an evidentiary hearing to take testimony related to Franklin's Motion to Dismiss the Indictment for Post-Indictment Delay. The only purported prejudice in this case is passage of time, not oppressive pretrial incarceration or "anxiety or concern." Specifically, Franklin argues that "[t]he passage of time . . . has unquestionably affected the memory of the officers who were present during the [arrest] that produced the three counts in the instant Indictment." *Mot.* 12:7-10. At the hearing, Franklin called the following six witnesses to the stand to develop, *inter alia*, his passage-of-time prejudice argument: law enforcement officers Elise Garcia, Eduardo Saldana, Kenny Cruz, Humberto Reyes Suarez, and Jason Smith, along with the Defendant's father Terry Franklin, Sr.

For purposes of prejudice in this case, the facts that follow, as developed at the hearing, are relevant. Franklin was arrested on December 6, 2006, by Long Beach Police Department Officers Thomas Erdelji and Megan Zabel. *See Erdelji Decl.* ¶ 11; *Zabel Decl.* ¶ 11. After being alerted to a LoJack signal, which uses a system installed in a car to transmit a signal to law enforcement once that car is reported stolen, Officers Erdelji and Zabel approached a 2006 Honda Civic to confirm that it was the car that was reported as stolen. *See Erdelji Decl.* ¶¶ 4-7.

---

[3] There is no bright line rule in the Ninth Circuit providing a clear instruction on when at least a minimal amount of prejudice must be shown by a defendant, and when there is a rebuttable presumption of prejudice based on a delay that is "great." *See. Shell*, 974 F.2d at 1036 ("[n]o showing of prejudice is required when the delay is great and attributable to the government." ) (citing *Doggett*, 505 U.S. at 655-56 (noting that "affirmative proof of particularized prejudice is not essential to every speedy trial claim . . . excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify")); *see also United States v. Martin*, No. CR 93-577 SBA, 1997 WL 578628, at *11 (N.D. Cal. Sept. 5, 1997) ("There is no bright line test [in the Ninth Circuit] regarding the length of delay which justifies dismissal of an indictment without a showing of actual prejudice."). The Court notes that the approximately three and a half year delay in this case does not rise to the levels of delay recognized as creating a presumption of prejudice in many Ninth Circuit cases. Thus, the Court concludes that at least a minimal amount of non-speculative prejudice must be shown by Franklin.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#40**

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 07-967 PSG | Date | May 26, 2011 |
|---|---|---|---|
| Title | United States v. Terry Lee Franklin | | |

Officers Erdelji and Zabel then drove to a concealed location just east of the stolen car to wait and see if the driver would return. *Id.* ¶ 7. When a driver did emerge and start to drive the car, Officers Erdelji and Zabel approached the car to make an arrest. *Id.* ¶¶ 9-10. According to the Officers' account, at the same time, Franklin started walking towards the passenger side of the car, but immediately turned and walked away once he recognized that the police were approaching. *Id.* ¶ 10. While Officer Zabel focused on the driver of the stolen car, *see Zabel Decl.* ¶ 12, Officer Erdelji got out of the police car and ordered Franklin to stop walking away, before ultimately bringing him down to the ground, arresting him and reading him his *Miranda* rights, *Erdelji Decl.* ¶¶ 11-18.

Officers Erdelji and Zabel believed that they were the only two officers initially on the scene and that backup units arrived to assist during "the course of these events." *See id.* ¶¶ 12, 14. The officers who arrived to assist are the officers who testified at the May 16, 2011 evidentiary hearing on Defendant's Motion to Dismiss. The general theme of the evidentiary hearing was that the officers who responded to assist Officers Erdelji and Zabel could not remember the incident at all, or could not remember Mr. Franklin's arrest, specifically. For example, when asked if she had "any recollection at all of the incident" on December 6, 2006, Officer Garcia simply responded "No." *5/16 Transcript* 14:11-12. Similarly, when Officer Saldana was asked he had any recollection of the incident, he responded "[m]inimal," and when asked if he had any recollection of the incident before re-reading the arrest, incident and tow-sheet reports in preparation for the hearing, Officer Saldana responded that he did not.[4] *Id.* 18:19-19:7. Officer Cruz also indicated that he did not remember the December 6, 2006 incident, even after reading the arrest report to refresh his recollection in preparation for the hearing. *Id.* 28:15-29:1. When Officer Suarez was asked if he remembered the incident leading to Mr. Franklin's arrest, he indicated that he did, but only after re-reading the police report authored by Officer Erdelji and the dispatch records. *Id.* 33:4-24. Finally, Officer Smith testified that he did recall the events of December 6, 2006, but his memory was limited to

---

[4] At the May 16, 2011 hearing, Officer Saldana testified that although he had no independent memory of the events of December 6, 2006, he could recall certain details. For example, Officer Saldana testified that he remembers a high-risk felony stop where the police ordered two suspects out of a stolen car: one driver and one passenger. *See 5/16 Transcript* 22:22-24. While this may have been a traffic incident that Officer Saldana responded to, it is undisputed that it is not the same December 6, 2006 incident involving Franklin, as both sides agree that Franklin was not a passenger in the car when he was arrested.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#40**

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 07-967 PSG | Date | May 26, 2011 |
|---|---|---|---|
| Title | United States v. Terry Lee Franklin | | |

"seeing a lot of police officers" who were "involved in a call." *Id.* 43:6-17. At the very least, the testimony indicates that none of the officers who were present at the evidentiary hearing had any unrefreshed recollection of the Defendant's arrest, even though dispatch reports suggest that Officers Saldana, Reyes and Cook may have been "on scene" before, during and after the Defendant's detention. *See Def.'s Post-Hearing Reply* 4:13-8:9, Ex. A (the Dispatch Report).

According to Mr. Franklin, the fact that "these percipient witnesses do not in fact remember, nor would it be plausible for them to remember four and a half years later, what they saw or what they did that day," shows a degree of particularized prejudice to Mr. Franklin's defense sufficient to warrant dismissal on Sixth Amendment speedy trial grounds. *Id.* at 3:10-12. More specifically, Mr. Franklin argues that the particularized prejudice stemming from the lost memories in this case is as follows:

> The opportunity to question [the responding officers] on [the events of December 6, 2011] was critical to Mr. Franklin's defense. Not only could their testimony have contradicted Officer Erdelji's account, or corroborated Mr. Franklin's, on the key questions at issue at trial [and] the suppression hearing; it would have produced five additional, independent officer accounts of the events that day. These five independent accounts would have almost certainly differed, at least in small details, from Officer Erdelji's account, if not created a cacophony of different narratives. As the Court knows from its daily practice, it is sometimes the small inconsistencies, rather than the big contradictions, that, together, amount to reasonable doubt or a finding of adverse credibility. This is particularized prejudice to Mr. Franklin's defense, warranting the dismissal of the Indictment with prejudice.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#40**

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 07-967 PSG | Date | May 26, 2011 |
|---|---|---|---|
| Title | United States v. Terry Lee Franklin | | |

*Id.* at 3:12-22.[5] The question before the Court related to this *Barker* prejudice prong is whether by showing that certain officers' have faded memories, Defendant has met his burden of establishing at least some non-speculative, particularized prejudice. *See Lam*, 251 F.3d at 860 (rejecting a Sixth Amendment claim where the defendant's arguments related to the prejudicial effect of faded memories amounted to "at most speculation and fail[ed] to demonstrate any actual prejudice to his defense"). The Court concludes that he has not.

As discussed earlier, to meet *Barker's* third requirement, a defendant has the burden of establishing "actual, nonspeculative prejudice from the delay." *United States v. Corona-Verbera*, 590 F.3d 942 (9th Cir. 2010).[6] Doing so is difficult, and requires a defendant to show "that lost testimony, witnesses or evidence meaningfully has impaired his ability to defend himself, and the proof must demonstrate by definite and non-speculative evidence how the loss of a witness or evidence is prejudicial to his case." *Id.* at 1112 (quotations omitted). Importantly, there is "no prejudice where the record [does] not indicate how the witnesses 'would have testified had their memories not dimmed.'" *Id.* (quoting *United States v. Sherlock*,

---

[5] After the May 16, 2011 evidentiary hearing, the Court ordered an additional round of briefing to specifically address the issue of prejudice. Mr. Franklin and the Government each submitted the requested post-hearing briefs, and the Court brought the parties in for a final argument on the Motion to Dismiss on May 24, 2011. At that hearing, Mr. Franklin re-iterated that the officers' faded memories caused Mr. Franklin particularized prejudice in that he now lacks the ability to draw out potential inconsistencies in each officer's testimony, which could have led a jury to find reasonable doubt in the Government's case.

[6] The Government, in the arguments made to the Court, relies heavily on *Corona-Verbera* and other cases discussing dismissal under both the Fifth Amendment's Due Process Clause and the Sixth Amendment's Speedy Trial provision. *See, e.g., Gov'ts Supp. Brief* 10:27. At the final hearing on Defendant's Motion to Dismiss, Franklin's counsel argued that the standard for dismissal in pre-indictment, Fifth Amendment cases does not apply to the Sixth Amendment. The Court agrees with that position. The Court notes, however, that the Government does not incorporate wholesale the Fifth Amendment standard to the case pending before the Court. Instead, the Government cites the cases only to illuminate what may constitute "actual prejudice" as it is used in both the Fifth and Sixth Amendment contexts. *See Corona-Verbera*, 509 F.3d at 1116 (concluding that because Corona-Verbera failed to establish actual prejudice under the Fifth Amendment, he also failed to establish actual prejudice for purposes of the Sixth Amendment).

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#40**

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 07-967 PSG | Date | May 26, 2011 |
|---|---|---|---|
| Title | United States v. Terry Lee Franklin | | |

962 F.2d 1349, 1354 (9th Cir. 1989)).[7] For example, "when a defendant fails to make a specific showing as to what a deceased witness would have said, any argument of prejudice is pure conjecture." *Id.* at 1113. Thus, to warrant dismissal, "the defendant must show not only the loss of the witness and/or evidence *but also* [m]ust demonstrate how that loss is prejudicial to him," and the "latter proof must be definite and not speculative: The assertion that a missing witness might have been useful does not show[] 'actual prejudice.'" *United States v. Mays*, 549 F.2d 670, 677 (9th Cir. 1977) (citations and some quotations omitted) (emphasis added); *see also Loud Hawk*, 474 U.S. at 315 (noting with respect to missing witnesses or loss of memory due to delay, that such "possibility of prejudice is not sufficient to support respondents' position that their speedy trial rights were violated"); *Lam*, 251 F.3d at 860 ("Lam's contentions regarding alleged defects in witness testimony or lost evidence amount at most to speculation and fail to demonstrate any actual prejudice to his defense"); *United States v. Dudden*, 65 F.3d 1461, 1466 (9th Cir. 1995) (to show actual prejudice, "a defendant must show more than the mere loss of testimony," and must provide "by definite and non-speculative evidence how the loss of a witness or evidence is prejudicial to the defendant's case" (quotation omitted)).

      It is undisputed that some of the officers' memories in this case have faded, but to establish prejudice sufficient to warrant dismissal Franklin must also show that those faded or missing memories actually, not speculatively, damaged his defense.[8] This Franklin has not done. In fact, Franklin's own argument highlights the speculative nature of the prejudice in this case. For example, Franklin argues that the responding officers' five "independent accounts" of the events leading to Franklin's arrest "*could* . . . have contradicted Officer Erdelji's account" and

---

[7] At the final Motion to Dismiss hearing, Franklin's counsel conceded that merely establishing a witness's missing or faded memory is not enough to meet a defendant's burden to show actual, non-speculative prejudice and that more is required.

[8] The Government does not contest that some of the officers' memories have faded since the December 6, 2006 incident leading to Franklin's arrest. The Government does, however, argue that even if the officers' memories had not faded, none of the officers who testified at the May 16, 2011 hearing were in a position to actually see anything that could exculpate Franklin. *See, e.g., Gov'ts Post-Hearing Supp.* 11:21-22. The facts of whether a certain officer was "on scene" and actually in a position to observe Franklin's arrest and all that followed are disputed. For purposes of this Order, it does not matter whether the officers were in a position to witnesses the events of December 6, 2006, because all that Defendant has shown is the existence of lost or faded memories, and not any actual, non-speculative prejudice to his defense.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#40**

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 07-967 PSG | Date | May 26, 2011 |
|---|---|---|---|
| Title | United States v. Terry Lee Franklin | | |

"would have *almost certainly* differed, at least in small details, from Officer Erdelji's account, if not created a cacophony of different narratives[, and a]s the Court knows from its daily practice, it is *sometimes* the small inconsistencies . . . that, together, amount to a reasonable doubt or a finding of adverse credibility." *Def.'s Post-Hearing Reply* 4:13-20 (emphasis added). In other words, "[t]he prejudice to Mr. Franklin is that he has lost the opportunity to draw on . . . [potential] inconsistencies, if not big contradictions, among different individual officer accounts to challenge the credibility and coherence of Officer Erdelji's account" of events. *Id.* at 19:2-5. Not only does Franklin speculate that fresh accounts of the events of December 6, 2006, as provided by the different officers who were on scene, could be different, but he takes it a step further and posits that if the accounts were different, then, on that basis, the jury might not believe an officer's account, which could plant the seed of reasonable doubt in the jury's collective mind. This amounts to little more than the insufficient assertion "that a missing witness might have been useful," *Mays*, 549 F.2d at 677, and Franklin has otherwise failed to indicate how these witnesses "would have testified had their memories not dimmed," *Corona-Verbera*, 509 F.3d at 1113. *See also United States v. Rogers*, 722 F.2d 557, 661-62 (9th Cir. 1983) (missing testimony that "might" have been useful does not show actual prejudice).[9]

---

[9] Franklin relies heavily on a case decided by the District Court for the Southern District of New York—*United States v. Leaver*, 358 F. Supp. 2d 255 (S.D.N.Y. 2004)—to support his argument that he has presented non-speculative prejudice warranting dismissal. In that case, the Court held that:

> The Government questions whether [certain witnesses] would have provided useful testimony . . . The Government argues that because these witnesses would not have been useful to Leaver, he is not prejudiced by their unavailability. It is, of course, possible that these witnesses would not have been as valuable as Leaver claims. However, even if the testimony of these witnesses would have been weak – and, and if the Government had promptly located and extradited Leaver, it could have challenged their testimony at trial – their testimony might have sufficed to raise a reasonable doubt. Leaver has therefore succeeded in specifically identifying prejudice to his ability to offer a defense.

*Id.* at 273. This Court is not persuaded by the reasoning in that case and specifically notes that the defendant in that case identified specific defense witnesses who died as a result of the passage of time, the testimony that they would have provided and how it would have been at

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#40

CRIMINAL MINUTES - GENERAL

| Case No. | CR 07-967 PSG | Date | May 26, 2011 |
|---|---|---|---|
| Title | United States v. Terry Lee Franklin | | |

The delay between indictment, arrest, and trial in this case is not insignificant, yet it is not "great" enough to warrant dispensing with Franklin's obligation to show even the slightest prejudice.[10] Franklin, however, relies only on the possibility of prejudice and makes no showing of actual prejudice. As a result, this factor weighs in favor of the Government.

5. Balancing the Factors

Although approximately three and a half years elapsed between Franklin's indictment and the original date set for his trial—at least a portion of which was due to the Government's negligent attempt to locate and arrest him—the delay has not concretely prejudiced Franklin. After carefully considering that the reason for the delay weighs in favor of Franklin and that Franklin was unable to show even a small amount of particularized prejudice, the Court finds that, on balance, the delay between Franklin's indictment and date for trial did not violate his speedy trial rights. *See United States v. Williams*, 782 F.2d 1462, 1465-66 (9th Cir. 1985) (a delay of 39 months not caused by the government, but involving some prejudice, did not violate defendant's speedy trial rights).

    C.    Whether Dismissal is Warranted Under Federal Rule of Criminal Procedure 48(b)

---

least somewhat helpful to his case. *Id.* at 272.

[10] Franklin cites to *United States v. Martin*, No. CR 93-577 SBA, 1997 WL 578628 (N.D. Cal. Sept. 5, 1997) to support his argument that he need not show any actual prejudice in this case because of the length of delay between indictment and trial. In that case, a thirty-six month post-indictment delay warranted a presumption of prejudice "given the ease with which the government could have brought the defendant into custody." *Martin*, 1997 WL 578628, at *12. The defendant was, for a period of time, in state custody and the United States could have brought him to trial simply by asking the state to turn him over. That is not the case here, where the Government, for a period of time, diligently searched for Franklin but was unable to locate him before apparently halting the investigation. In addition, the *Martin* court recognized that a thirty-six month delay—a delay similar to the delay in this case—is shorter than the time periods in other Ninth Circuit cases where prejudice was presumed. *See also United States v. Packer*, 857 F. Supp. 726, 733 (C.D. Cal. 1994) (Wilson, J.) (where a four-delay warranted a finding of presumed prejudice because the government could have easily requested that the state return an inmate to federal custody).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 07-967 PSG | Date | May 26, 2011 |
|---|---|---|---|
| Title | United States v. Terry Lee Franklin | | |

     Finally, Franklin argues that this Court should, in its discretion, dismiss the Indictment under Federal Rule of Criminal Procedure 48(b) due to unnecessary delay. Though related to the Sixth Amendment's speedy trial guarantee, Rule 48(b) permits a court to dismiss an indictment for undue delay even where there is no Sixth Amendment violation. *See United States v. Hattrup*, 763 F.2d 376, 377 (9th Cir. 1985). Franklin insists that there is a substantial threat of prejudice caused by the delay in bringing him to trial. *See Mot.* 13:15. While "demonstrable prejudice [to a defendant] or threat thereof," may warrant dismissal under Rule 48(b), *see Hattrup*, 763 F.2d at 378, Franklin has failed to identify any prejudice caused by delay in this case, as explained above. In addition, the Court has not found reason to cautiously exercise its discretion under Rule 48(b) and forewarn the Government of the consequences of a Rule 48(b) dismissal. *Id.* at 377 (explaining that failure to comply with the "forewarning requirement" before dismissing an indictment under Rule 48(b) is reversible error). As a result, Franklin's argument for a Rule 48 dismissal is without merit.

III.    Conclusion

     Based on the foregoing, the Court DENIES Franklin's Motion to Dismiss the Indictment.

**IT IS SO ORDERED.**