**O**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**#124/126**

## CRIMINAL MINUTES - GENERAL

| Case No. | CR 07-967 PSG | Date | August 5, 2011 |
|---|---|---|---|
| Case | United States v. Terry Lee Franklin | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge |
|---|---|

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

Attorneys Present for United States(s):          Attorneys Present for Defendant(s):

Not Present                                   Not Present

**Proceedings:** **(In Chambers) Order DENYING Defendant Terry Lee Franklin's Motions to Dismiss Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B) and Motion for Acquittal Pursuant to Federal Rule of Criminal Procedure 29**

Pending before the Court is Defendant Terry Lee Franklin's Motions to Dismiss pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B) and Motion for Acquittal pursuant to Federal Rule of Criminal Procedure 29. The Court heard oral argument on the Motions on August 3, 2011. After considering the moving papers, the opposing papers, and the arguments presented at the hearing, the Court DENIES the Motions.

I.     <u>Introduction</u>

The United States ("U.S." or "Government") charged Terry Lee Franklin ("Franklin" or "Defendant") in a three count indictment (the "Indictment") with the following: (1) count one, misuse of a passport in violation of 18 U.S.C. § 1544; (2) count two, fraud and misuse of documents in violation of 18 U.S.C. § 1546(a); and (3) count three, aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1). The main facts relevant to the Indictment and trial are as follows: Franklin was stopped in 2007 after police spotted him walking away from the scene of a felony traffic stop; when he was stopped, Franklin was in possession of a United States passport bearing his photograph, but the name and other identifying information of his cousin, Christian Blair Bishop.

On the first day of Franklin's trial, but after jury selection was complete and a jury was

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#124/126

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 07-967 PSG | Date | August 5, 2011 |
|---|---|---|---|
| Case | United States v. Terry Lee Franklin | | |

empanelled, Franklin served the government with a Federal Rule of Criminal Procedure 12(b)(3)(B) motion to dismiss each count in the Indictment for failure to state an offense, which was filed with the Court the next day. After the close of the Government's case, Franklin served the Government with another Rule 12(b)(3)(B) motion to dismiss along with a Rule 29 motion for judgment of acquittal as to count three, aggravated identity theft. On July 8, 2011, the jury convicted Franklin on counts two and three of the Indictment, but was unable to reach a verdict as to count one.

Because the jury did not acquit Franklin, his motions to dismiss for failure to state an offense and his motion for acquittal are still relevant. The Court ordered that the Government brief the issues raised by Franklin in each of the motions, which the Government did. For the reasons that follow, the Court DENIES Franklin's motions.

II.    Discussion

The Court first addresses the Rule 12(b)(3)(B) motion to dismiss for failure to state an offense that Franklin filed on July 6, 2011 (the "July 6 Motion"), followed by the Rule 12(b)(3)(B) motion to dismiss and the Rule 29 motion for acquittal (the "July 7 Motions").

A.    The July 6 Federal Rule of Criminal Procedure 12(b)(3)(B) Motion to Dismiss for Failure to State an Offense

Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), "at any time while the case is pending, the court may hear a claim that the indictment . . . fails . . to state an offense." Fed. R. Crim. P. 12(b)(3)(B). There is a difference, however, between objections to an Indictment made before all the evidence is received in a jury trial, and challenges made later; tardy challenges lead to liberal constructions of the Indictment, timely ones do not. *Echavarria-Olarte v. Reno*, 35 F.3d 395, 397 (9th Cir. 1994) (Defendant "did not challenge his indictment before or during trial or on direct appeal. Because he has not shown cause for this failure to object, we must construe his indictment liberally in favor of validity."); *United States v. Pheaster*, 544 F.2d 353, 361 (9th Cir. 1976) (liberally construing an Indictment where a challenge was brought only after all the evidence had been received). Here, the July 6 motion was served during trial. Liberally construed or not, however, the Indictment lacks any deficiencies warranting dismissal.

1.    Count One – 18 U.S.C. § 1544

**O**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**#124/126**

### CRIMINAL MINUTES - GENERAL

| Case No. | CR 07-967 PSG | Date | August 5, 2011 |
|---|---|---|---|
| Case | United States v. Terry Lee Franklin | | |

      Although the jury was unable to reach a unanimous guilty or not guilty verdict as to count one, Franklin still seeks dismissal to preclude a retrial of count one alone.

      Count one in the Indictment charges Franklin with misuse of a passport, as criminalized by 18 U.S.C. § 1544. Section 1544 provides that "whoever willfully and knowingly uses or attempts to use any passport issued or designed for the use of another shall be fined [or imprisoned, or both] under this title." 18 U.S.C. § 1544 (first paragraph). Franklin seeks dismissal of count one because, according to him, 18 U.S.C. § 1544 only applies to misuse of "valid" passports, not passports issued by the United States Government as a result of fraud or false statement. *See Mot.* 5:7-9. The Government, on the other hand, argues that § 1544, by its terms, "criminalizes the willful and knowing use or attempted use of 'any passport issued *or* designed for the use of another,'" and is not limited to the willful and knowing use or attempted use of any *validly issued* passport. *Opp'n* 41:9-11 (emphasis added). The Court agrees with the Government.

      Interpreting 18 U.S.C. § 1544 must start with the language of the statute itself. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997) (The "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case."). In relevant part, § 1544 permits criminal punishment of anyone who "willfully and knowingly uses, or attempts to use, any passport issued or designed for the use of another." 18 U.S.C. § 1544.

      The plain language of the statute omits any mention of the word "valid," which Franklin would have this Court read into § 1544 as a qualifier to the term "passport." Instead, the statute says it applies to "any passport," not only valid or validly issued ones. Despite this, Franklin maintains that merely by using the term "passport," Congress intended that it apply to any valid passport because a document purported to be a passport procured by fraud is not a "passport" at all, but a false or unlawful passport as made clear by other relevant criminal statutes. This interpretation conflicts with the text of the statute.

      To read the statutory language of "any passport" to actually mean "any valid passport" would have absurd results when read in context with the provisions that precede it. For example, Section 1542 provides that "[w]hoever willfully and knowingly uses or attempts to use . . . any passport the issue of which was secured in any way by reason of any false statement . . . [s]hall

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#124/126**

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 07-967 PSG | Date | August 5, 2011 |
|---|---|---|---|
| Case | United States v. Terry Lee Franklin | | |

be fined under this title, imprisoned . . . or both." 18 U.S.C. § 1542. Franklin admits that a passport "procured by false statement" is an "unlawful passport," so it would be anomalous to say that § 1542 criminalizes use of an unlawful "valid passport" procured by false statement. The same is true for § 1543, which criminalizes the forgery and counterfeiting of "any passport," not just (the impossible) forged or counterfeit "valid passport." Indeed, diving deeper into § 1543 illustrates why Franklin's interpretation that "any passport" means "any valid passport" is wrong. In § 1543, Congress showed that when it wanted to limit the term "passport" to a valid passport, it knew how to do so by identifying "any passport validly issued." 18 U.S.C. § 1543.

As noted by the Government, Franklin heavily relies on language printed in government issued passports reading:

> It is unlawful for any person other than the original, *lawful* recipient to use the passport. Use of this passport in contravention of passport regulations or of the conditions or restrictions set out in the passport, or for travel to countries where a U.S. passport is not valid, is a felony (Title 18 U.S. Code, Section 1544).

*Mot.* 5:13-17 (quoting *Mot.*, Ex. C) (emphasis in Franklin's motion). The problem with using language printed inside a passport to limit the application of 18 U.S.C. § 1544 is twofold: first, it is logical for the federal government to assume it is issuing a valid passport once all the requirements are seemingly met, improper use of which is illegal; and, second, even if the passport's warning is narrower than § 1544, the passport does not purport to identify each passport-related crime a person can commit and there is nothing to suggest that the scope of § 1544 is limited by any such warning. *See also* 18 U.S.C. §§ 1542, 1543 (criminalizing the use of a passport procured by a false statement and a mutilated passport, respectively, neither of which is mentioned in the passport's warning identified by Franklin).

Finally, Franklin states that § 1544's "modifying language, 'issued and designed' for the use of another . . . is consistent with the statutory meaning of 'passport' in [this] provision[] as a 'valid' passport." *Mot.* 7:27-8:1. The Court is not entirely sure how Franklin arrives at that conclusion, but notes that § 1544 applies to both passports "issued" for the use of another, and those "designed" for the use of another. *See* 18 U.S.C. § 1544. As noted by the Government, "[l]ooking at the passport in this case, with the name, birthdate, and 'signature of bearer' of Christian Bishop, it is clear (as U.S. Department of State Fraud Program Manager Gloria Green testified at trial) that the passport was designed for the use of Christian Bishop," and Franklin's

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#124/126**

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 07-967 PSG | Date | August 5, 2011 |
|---|---|---|---|
| Case | United States v. Terry Lee Franklin | | |

"use of that passport to identify himself to a Long Beach police officer was a 'misuse.'" *Opp'n* 41:14-23.

The plain text of the statute and the context created by the statutory provisions that surround it make clear that 18 U.S.C. § 1544 is not limited to the misuse of valid or validly issued passports as Franklin contends, but also applies to passports issued or designed by the United States government as a result of false statements on an application form, which is the situation presented in this case.[1]  *See Mot.* 5 n.4 (stating that Franklin "falsely applied for, and was issued, a passport [by the United States government] with his own photograph and the identifying information of Christian Bishop.").[2]

2.    Count Two – 18 U.S.C. § 1546(a)

Count two of the Indictment reads as follows:  "On or about December 6, 2006, . . . defendant Terry Lee Franklin knowingly possessed a United States passport, number XXXXX6447, in the name of Christian Blair Bishop, knowing such document to have been procured by means of a false claim and statement and by fraud and to have been unlawfully obtained."  The grand jury found these facts sufficient to charge Franklin with violating 18 U.S.C. § 1546(a).  That statute reads:

Whoever knowingly forges, counterfeits, alters, or falsely makes any immigrant or nonimmigrant visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, or utters, uses, attempts to use, possesses, obtains, accepts, or receives any such visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the

[1] Because the Court's decision is based on the plain text and statutory context of 18 U.S.C. § 1544, the Court need not address Franklin's other arguments based on often-unreliable legislative history and titles.  *See Mot.* 8:21-12:22.
[2] Just because Franklin could have also been charged with use of a passport procured by false statement under 18 U.S.C. § 1542 does not mean that a conviction for misuse of a "passport" under 18 U.S.C. § 1544 cannot stand.  *See, e.g., Hunter v. United States*, 73 F.3d 260, 262 (9th Cir. 1996) ("[T]he Constitution does not forbid making the same conduct illegal under two statutes, and the government is permitted to prosecute under either one.").

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#124/126

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 07-967 PSG | Date | August 5, 2011 |
|---|---|---|---|
| Case | United States v. Terry Lee Franklin | | |

United States, knowing it to be forged, counterfeited, altered, or falsely made, or to have been procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained . . . Shall be fined under this title or imprisoned . . .

18 U.S.C. § 1546(a). The question presented is whether a *United States* passport qualifies as "any immigrant or nonimmigrant visa, permit, border crossing card, alien registration receipt card, or *other document* prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States." *Id.* (emphasis added). The Court concludes that it does. Before explaining that conclusion, however, the Court examines each parties' arguments.

Franklin argues that § 1546(a) applies only to "immigrant and non-immigrant" documents, not United States passports. This is so, Franklin says, because as used in the statute, "immigrant and non-immigrant" are adjectives modifying each of the listed nouns that follow. In particular, the nouns "visa, permit, border crossing card, alien registration receipt card, [and] other document" are all modified by the statutory term "immigrant or non-immigrant." *Mot.* 16:13-23. And because the terms "immigrant" and "non-immigrant" are statutorily defined terms describing different classes of "aliens"—not U.S. citizens—Franklin insists that even the broad "other documents" category of items covered by § 1546 is limited to alien related documents, not U.S. passports issued to citizens. *See, e.g.*, 8 U.S.C. § 1101(a)(15) ("The term 'immigrant' means every alien except an alien who is within one of the following classes of nonimmigrant aliens.").

The Government, on the other hand, argues that "immigrant or non-immigrant" does not modify the entire list of nouns that follow it, but instead modifies only "visas." As such, the "other documents" term is not limited to "immigrant or non-immigrant documents," and because United States passports can be used to enter and establish a citizen's right to stay or work in the United States, United States passports are covered by § 1546(a).[3]

---

[3] At the hearing, Franklin conceded that United States passports can be used to enter the United States, and also to establish a right to stay or work in the United States. Though this seems to meet the requirements of 18 U.S.C. § 1546, Franklin insists that, nevertheless, United States passports do not fall within the reach of of § 1546 because they are not "immigrant or non-immigrant" documents. For the reasons identified in this Order, the Court agrees with Franklin's concession, but not Franklin's conclusion.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

#124/126

## CRIMINAL MINUTES - GENERAL

| Case No. | CR 07-967 PSG | Date | August 5, 2011 |
|----------|---------------|------|----------------|
| Case | United States v. Terry Lee Franklin | | |

In arriving at this conclusion, the Government connects many statutory dots. For example, the Government notes that "Congress specifically defined both 'immigrant visa' . . . and 'non-immigrant visa' . . . in the same 1952 legislation that inserted 'non-immigrant visa' into § 1546 for the first time. *Opp'n* 2:6-10 (quoting Immigration and Nationality Act, Pub. L. No. 82-414, §§ 101(a)(16), 101(a)(26), 402(a), 66 Stat. 163, 169, 275 (1952)). This suggests that "immigrant or non-immigrant" applies only to "visas," because both "immigrant visa" and "non-immigrant visa" are terms of art with specific statutory definitions. Furthermore, and "[m]ost important, . . . [a]s part of the Immigration Reform and Control Act of 1986 . . . Congress expanded § 1546 to apply to documents 'prescribed by statutes or regulation for entry into or as *evidence of authorized* stay or *employment* in the United States,'" *Opp'n* 3:16-23 (emphasis added), and "[i]n that same legislation . . . Congress added a new statute specifying that one could establish 'employment authorization' using documents that include a '*United States passport*,'" *Opp'n* 3:25-4:1 (citing Pub. L. No. 99-603, § 101(b)(1)(B)(i) (codified at 8 U.S.C. § 1324a(b)(1)(B)(i)) (emphasis added).

Odd as it may seem, the Court agrees with both the Government and, to a limited extent, Franklin, but notes that the Government's argument must carry the day given case law and the statute as a whole.

Starting first with the text of 18 U.S.C. § 1546(a), the Court agrees with Franklin that § 1546(a) initially appears to only apply to documents that an alien would use to enter into and/or work in the United States, whether as an immigrant intending to stay, or as a non-immigrant intending only to visit. This is only true, however, when § 1546 is considered in isolation, devoid of the context created by other sections of the same law. For example, the interpretative canons of *noscitur a sociis* and *ejusdem generis* instruct courts to understand the meaning of an ambiguous term by looking at other terms around it, and to limit the meaning of a general term in a list by referring to the more specific items in the same list, respectively. *See United States v. Williams*, 553 U.S. 285, 295 128 S. Ct. 1830, 170 L. Ed. 2d 650 (2008); *Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 586, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008). In this case, regardless of whether "immigrant or non-immigrant" modifies the whole list or only the first term "visa," it might seem that the items in the list are documents that an alien could use to show the right to enter, stay or work in the United States. *See* 18 U.S.C. § 1546(a) (specifically identifying "visa[s], permit[s], border crossing card[s], [and] alien registration receipt card[s]" as within § 1546(a)'s scope). Applying the *noscitur a sociis* and *ejusdem generis* canons, it logical, but not necessary, to conclude that the general "other document" term should not be read broadly

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

#124/126

### CRIMINAL MINUTES - GENERAL

| Case No. | CR 07-967 PSG | Date | August 5, 2011 |
|---|---|---|---|
| Case | United States v. Terry Lee Franklin | | |

to include plane tickets (which might assist in physically "entering" the country), but should instead be limited to immigration documents of the type that an *alien* might use to validly enter, stay and work in the United States. This, Franklin concludes, suggests that the term "immigrant or non-immigrant" modifies the entire § 1546(a) list, including the "other documents" list item.

Franklin's position, however, misses the point. Just as courts are instructed to consider the context of a list when understanding otherwise general terms, courts are similarly instructed not to "interpret statutes in isolation, but in the context of the *corpus juris* of which they are a part." *Branch v. Smith*, 538 U.S. 254, 281, 123 S. Ct. 1429, 155 L. Ed. 2d 407 (2003). In this case, that requires reference to other aspects of the Immigration Reform and Control Act of 1986 (the "IRCA").

In 1986, Congress enacted the IRCA, which includes two provisions of particular importance to this case: Section 101 and Section 103. First, Section 101 of the IRCA attempts to control the unlawful employment of aliens in the United States and is codified at 8 U.S.C. § 1324a. More specifically, § 1324a makes it unlawful for an employer "to hire for employment in the United States an individual without complying with," an "Employment Verification System" whereby an employer must attest that "it has verified that the individual [to be employed] is not an unauthorized alien," which the employer can do by examining certain documents authorizing employment. 8 U.S.C. § 1324a(a)(1)(B), (b). The first document identified by Congress as evidence of "both employment authorization and identity" is an individual's "United States passport." § 1324a(b)(1)(B)(i). Congress did more than just create an Employment Verification System to regulate unlawful employment, however. Congress also enacted Section 103 of the IRCA, which expands the reach of 18 U.S.C. § 1546—the provision at issue in count two—to address fraud and misuse of certain documents.

In expanding the reach of § 1546, Congress sought to "reverse the Supreme Court's decision" in *United States v. Campos-Serrano*, 404 U.S. 293, 92 S. Ct. 471, 30 L. Ed. 2d 457 (1971). *United States v. Krstic*, 558 F.3d 1010, 1016 (9th Cir. 2009). In that case, the Supreme Court narrowly construed the types of documents covered by § 1546 and held that alien registration receipt cards (*i.e.*, green cards) did not fall within the statute's scope. *Campos-Serrano*, 404 U.S. at 300. According to the Court, "the language of § 1546 denotes a very special class of 'entry' documents—documents whose primary *raison d'être* is the facilitation of entry into the country." *Id.* at 299. Congress disagreed and did the only thing it could do to express its "clear intention of broadening the types of documents encompassed by § 1546(a)"

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#124/126

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 07-967 PSG | Date | August 5, 2011 |
|---|---|---|---|
| Case | United States v. Terry Lee Franklin | | |

beyond "entry documents;" it passed legislation.  *United States v. Ryan-Webster*, 353 F.3d 353, 362 (4th Cir. 2003); *see also Krstic*, 558 F.3d at 1016.

Specifically, Congress struck from § 1546(a) the language "other document *required for entry* into the United States," and replaced it with  "border crossing card[s], alien registration receipt card[s] and other document[s] *prescribed by statute or regulation for entry into or as evidence of authorized stay or employment* in the United States."  Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, § 103(a)(2), 100 Stat. 3359, 3380 (1986) (emphasis added); *see also Krstic*, 558 F.3d at 1016.  Thus, in the very legislation designed to both control unlawful employment of aliens and reverse the Supreme Court's narrow interpretation of § 1546, Congress did all of the following: (1) created an Employment Verification System; (2) identified the documents, including United States passports, that would suffice to establish employment authorization; and (3) expanded the list of documents covered by § 1546 to include "other documents prescribed by statute or regulation . . . as evidence of authorized . . . employment." This is important as it suggests that a document that can be used to establish authorized employment under § 101 of the statute is also covered by § 103's (18 U.S.C. § 1546) language regulating the misuse of documents that can be used as "evidence of authorized . . . employment."  Moreover, that section 101 specifically references its enforcement under section 103 plainly indicates that the two provisions must be understood together.  8 U.S.C. § 1324a(b)(5).

The fact that the IRCA did all these things, and should thus be understood by reference to its constituent parts, is not lost on courts considering the meaning and reach of § 1546.  For example, in *United States v. Pool-Chan*, 453 F.3d 1092 (8th Cir. 2006), the Eighth Circuit held that a counterfeit social security card is a type of "other document" covered by 18 U.S.C. § 1546.  It did so by explaining that "[i]n this statutory regime, 'evidence of authorized . . . employment' for purposes of § 1546(a) [IRCA § 103] plainly means documents establishing that a person is not an unauthorized alien within the meaning of 8 U.S.C. § 1324a [IRCA § 101], that is, documents such as a work applicant's social security account number card that are specified in the employer verification system, § 1324a(b)."  *Pool-Chan*, 453 F.3d at 1094.  In other words, the Eighth Circuit concluded that a document listed in § 1324a as proof of authorized employment is also a document included as an "other document" in § 1546(a).  The Ninth Circuit reached a similar conclusion in an unpublished case: *United States v. Mosherf*, 280 Fed. Appx. 578 (9th Cir. May 20, 2008).  Again the issue was whether a social security card is a "document which can form the basis for . . . liability . . . under 18 U.S.C. § 1546(a)."  *Mosherf*,

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#124/126

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 07-967 PSG | Date | August 5, 2011 |
|----------|---------------|------|----------------|
| Case | United States v. Terry Lee Franklin | | |

280 Fed. Appx. at 579.  After looking at IRCA § 101's implementing regulations, the Ninth Circuit held that a "social security card is a document that evidences authorization for employment," and "[t]hus, it clearly falls within the 'other document prescribed by . . . regulation' provision of 18 U.S.C. § 1546."  *Id.*  Notably, the same implementing regulation that lists social security cards as evidence of authorization for employment also lists "United States passport[s]" as evidence of "employment authorization."  8 C.F.R. § 274a.2(b)(1)(v)(C)(1) (listing social security cards); 8 C.F.R. § 274a.2(b)(1)(v)(A)(1) (listing "United States passport").  Both the Eighth and Ninth Circuits looked to IRCA § 101, 8 U.S.C. § 1324a, or its implementing regulations to determine whether a certain document qualified as an "other document prescribed by statute . . . as evidence of . . . authorized employment."

        Though the documents in those cases were different from the United States passport at issue here, the logic is the same.  Franklin is charged with violating 18 U.S.C. § 1546(a), which makes it illegal to possess any "immigrant or nonimmigrant visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation for entry into *or* as evidence of authorized stay *or* employment in the United States."  18 U.S.C. § 1546(a) (emphasis added to note the disjunctive).  Under IRCA § 101, 8 U.S.C. § 1324a, a United States passport is "prescribed by statute" as "evidence of authorized . . . employment."  8 U.S.C. § 1324a(b)(1)(B)(i).  Under IRCA's implementing regulations, a United States passport is also "prescribed by . . . regulation" as "evidence of authorized . . . employment."  8 C.F.R. § 274a.2(b)(1)(v)(A)(1).  Thus, after giving context to 18 U.S.C. § 1546(a) by examining the IRCA's relevant provisions, and after considering other cases addressing similar questions, the Court concludes that a United States passport is within § 1546(a)'s reach as an "other document prescribed by [both] statute [and] regulation . . . as evidence of authorized . . . employment."  Though the Court superficially agrees with Franklin that § 1546(a) appears to apply only to alien-related documents, no cannon of statutory construction can undo what Congress clearly did in the IRCA.  For if courts are instructed to look to IRCA § 101 to determine the scope of § 1546, as so held by the Eighth and Ninth Circuits, then Congress has specifically spoken as to the types of "other documents" covered by § 1546 and the analysis stops with the text of the law.[4]

---

[4] Franklin does not respond to this aspect of the Government's argument, and did not offer any explanation in his papers as to why the Eighth Circuit's *Pool-Chan* case or the Ninth Circuit's *Mosherf* case do not control the question in this case.  At oral argument, however, the Court asked about these cases and Franklin insisted that the social security cards at issue in those cases are of a different class of documents than United States passports because social security cards

**O**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

#124/126

## CRIMINAL MINUTES - GENERAL

| Case No. | CR 07-967 PSG | Date | August 5, 2011 |
|---|---|---|---|
| Case | United States v. Terry Lee Franklin | | |

      Franklin's argument is in large part based on the Ninth Circuit's 2009 opinion in *United States v. Krstic*. The issue before the Ninth Circuit in that case was whether § 1546(a) criminalizes the possession of "an authentic immigration document procured by means of a false statement," or whether it only applied to possession of "an already forged, counterfeited, altered, or falsely made immigration document." *Krstic*, 558 F.3d at 1012. At issue was the text of § 1546 and the meaning of "any such"; the first part of § 1546(a) punishes "[w]hoever knowingly forges, counterfeits, alters, or falsely makes any immigrant or nonimmigrant visa, permit, border crossing card . . . or other document . . . or [who] possesses *any such* visa, permit, border crossing card . . . or other document . . . knowing it to be forged, counterfeited, altered, or falsely made, or to have been procured by means of any false claim or statement." *Id.* at 1013 (emphasis added). Defendant Krstic argued that the term "any such" refers back to the act of knowingly forging, counterfeiting, altering, or falsely making an immigration-related, while the government argued that "any such" is just "short-hand for the phrase 'immigrant or nonimmigrant.'" *Id.* It is not the Ninth Circuit's holding that is of utmost importance in this case, however, as the Ninth Circuit had "no reason to consider whether any documents other than 'immigration' documents came within § 1546(a) because the case involved 'a Serbian national' and a falsely obtained alien registration receipt card." *Opp'n* 12:11-14 (quoting *Krstic*, 558 F.3d at 1011-12). In other words, the Ninth Circuit did not consider or explain the types of documents that fall within § 1546(a), only whether the documents could be forgeries rather than authentic. *Krstic*, 558 F.3d at 1016-17.

      According to Franklin, it does not matter that the Ninth Circuit did not precisely identify United States passports as within or outside the reach of § 1546, nor does it matter that the Ninth Circuit had no occasion to consider the types of documents that § 1546 covers. Instead, it is the Ninth Circuit's examination of § 1546's evolution that provides the answer to the question pending before this Court. For example, Franklin cites the Ninth Circuit's explanation that the phrase "any such" was added "to avoid repeating . . . the words 'immigrant or non-immigrant'"

can be issued to aliens whereas United States passports cannot. As mentioned, Franklin argues that § 1546(a) reaches only "immigrant or non-immigrant" documents throughout his Motions. Just because a social security card can be issued to an alien, however, does not necessairly make a social security card an "immigrant or non-immigrant" document. Franklin's position implies that a Court should treat social security cards differently based on the citizenship status of the person to whom the card was issued: when issued to an alien they are "immigrant or non-immigrant" documents, when issued to a citizen they are not. The Court does not read § 1546(a) in such a manner.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#124/126

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 07-967 PSG | Date | August 5, 2011 |
|---|---|---|---|
| Case | United States v. Terry Lee Franklin | | |

before the second listing of documents covered by § 1546.  *Mot.* 17:21-23.  Franklin also cites the sentence in the opinion stating that certain amendments to § 1546(a) "were designed to expand the statute's coverage to include . . . other *immigration* documents."  *Reply* 9:25, 10:8. But these portions of the *Krstic* opinion do not clarify how this Court is to answer the question before it.  Franklin's flaw is in analyzing the Ninth Circuit's opinion as if it were statutory text. The fact that the Ninth Circuit viewed certain amendments as necessary to expand the scope of § 1546 to reach other "immigration documents," does not mean, as Franklin implies, that the statute covers *only* documents statutorily defined as pertaining to "immigrants."  If that were so, then the Ninth Circuit must have misstated that § 1546 reaches "other *immigration* documents," for there is no doubt that § 1546 covers both "immigrant" and "non-immigrant" documents, each with a precise meaning.  But the Court cannot agree that the Ninth Circuit erred because it was merely explaining the effect of Congress' amendments and did not purport to identify a specific class of documents within § 1546(a)'s reach at the expense of all others.  While *Krstic* is relevant, it is not directly on point for purposes of this case.

Finally, Franklin argues that if Congress wanted § 1546 to cover United States passports it surely knew how to do so; all it would require is including the term "passport" to § 1546.  *See Mot.* 25:12-16. Of course, there is some attractiveness to that argument.  But it ignores the fact that just because Congress could have made a statute more clear does not mean that a statute applies only to the extent that it is a model of clarity.[5]  And as explained above, in 1986 Congress *did* bring United States passports within the scope of § 1546 by identifying them as documents establishing employment authorization in 8 U.S.C § 1324a.

3.      Count Three – 18 U.S.C. § 1028A

Franklin also seeks dismissal of count three of the Indictment for failure to allege all the elements of the aggravated identity theft statute, 18 U.S.C. § 1028A.  *Mot.* 29:23-30:1.

Count III of the Indictment alleges that Franklin "knowingly possessed and used, without lawful authority, a means of identification of another person, that is, a United States passport in

---

[5]  Franklin's argument that "passport" must be specifically included in § 1546(a) to be covered by the statute suggests that any document not listed in § 1546 is outside the statute's reach.  But Franklin admitted that social security cards are covered by § 1546(a), yet those are not mentioned.  Moreover, to adopt Franklin's position would render the catch-all "other documents" term meaningless.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#124/126

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 07-967 PSG | Date | August 5, 2011 |
|---|---|---|---|
| Case | United States v. Terry Lee Franklin | | |

the name of Christian Blair Bishop, during and in relation to a felony violation enumerated in 18 U.S.C. §1028A(c)(7), namely: (1) violation of 18 U.S.C. § 1544 [count one] . . . ; and (3) violation of 18 U.S.C. § 1546 [count two]." *See* Dkt. 1 at 3:4-12 (the Indictment). Section 1028A of Title 18 of the United States Code provides: "Whoever, during and in relation to any felony violation enumerated in subsection (c) [including counts one and two], knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall" be subject to punishment. 18 U.S.C. § 1028A(a)(1). Despite the fact that the Indictment copies § 1028A in relevant part, Franklin argues that the grand jury was never clearly informed that a defendant must know "that the means of identification belonged to a real person." *Mot.* 31:8-13. To understand Franklin's argument, some historical context is necessary.

Franklin was indicted by a grand jury in 2007. The grand jury issued a true bill after concluding that Franklin "knowingly possessed and used, without lawful authority, a means of identification of another person." Dkt. 1 at 3:4-6. As mentioned above, the language in the Indictment parrots, in relevant part, § 1028A. While all this was happening, a case concerning the meaning of 18 U.S.C. § 1028A was working its way though the Eighth Circuit and United States Supreme Court. In late 2009, roughly two years after Franklin was indicted, the Supreme Court decided that case, *Flores-Figueroa v. United States*, ___ U.S. ___, 129 S. Ct. 1886, 173 L. Ed. 2d 853 (2009). Franklin insists that *Flores-Figueroa* altered the way a § 1028A charge must be presented to the grand jury, and argues the "2007 Indictment at issue in this case fails to recite what is now, pursuant to *Flores-Figueroa* . . . an essential element of Count III: That 'the defendant *knew* that the means of identification belonged to a 'real person.''" *Mot.* 31:8-10 (quoting *Flores-Figueroa*). The Court disagrees.

The dispute in *Flores-Figueroa* centered around whether a conviction under § 1028A requires the Government to prove that a defendant "*knew* that the means of identification at issue belonged to another person," *id.* at 1888 (emphasis in original), or whether § 1028A's knowledge requirement applies only to the first—"transfers, possesses, or uses without lawful authority"—part of the statute. Based on "ordinary English" and the plain text of the statute—indeed, the "clarity of the text"—the Supreme Court held that a defendant must know that the means of identification belonged to another person in order to be convicted under 18 U.S.C. § 1028A. *Id.* at 1890-93. The Court explained that "[t]here are strong textual reasons for rejecting the Government's position" because "[a]s a matter of ordinary English grammar, it seems natural to read the statute's word 'knowingly' as applying to all the subsequently listed

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

#124/126

## CRIMINAL MINUTES - GENERAL

| Case No. | CR 07-967 PSG | Date | August 5, 2011 |
|----------|---------------|------|----------------|

| Case | United States v. Terry Lee Franklin |
|------|-------------------------------------|

elements of the crime." *Id.* at 1890.  Further emphasizing the plain meaning of § 1028A, the Court stressed that "ordinary English," *id.*, and "the clarity of the text," *id.* at 1893, outweighed any competing interpretive considerations that might be found in legislative history, *id.  See also*, *id.* at 1893-96 (opinions of Justices Scalia and Alito, concurring).

In light of the Indictment and *Flores-Figueroa*, Franklin's argument is without merit.  As discussed, the Indictment is identical in all relevant and material respects to the language found in 18 U.S.C. § 1028A.  The Supreme Court examined rules of "ordinary English" and the statute's plain meaning before arriving at the conclusion that the text of the statute commands but one result.  It must follow then that where the Indictment tracks § 1028A, the term "knowingly" as used in both means that the defendant knew that the identification he used belonged to another real person.  *See United States v. Marimuthu*, No. CR 07-30, 2009 WL 3063026, at *2-3 (D. Neb. Sept. 17, 2009) (denying a motion to dismiss a § 1028A charge in light of *Flores-Figueroa* because the Supreme Court's decision was based on the ordinary meaning of the text and did not identify "an element of the crime of aggravated identity theft that was not already present in the statute").

Not only does the Indictment track § 1028A, however, it also charges Franklin with knowing that the identification he possessed and used in fact belonged to Christian Blair Bishop, "another person."  *See* Dkt. #1 (the Indictment) ("defendant Terry Lee Franklin knowingly possessed and used . . . a means of identification of another person, that is, a United States passport in the name of Christian Blair Bishop").  Each element of the charged offense was recited in the Indictment and dismissal of count three is not warranted.  *Cf. United States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir. 1999) ("If properly challenged prior to trial, an indictment's complete failure to recite an essential element of the charged offense is not a minor or technical flaw subject to harmless error analysis, but a fatal flaw requiring dismissal of the indictment.").  Even under close scrutiny, Franklin's argument is contrary to the law and Franklin's motion to dismiss Count III is DENIED.

B.     The July 7 Rule 12(b)(3)(B) Motion to Dismiss for Failure to State an Offense and Rule 29 Motion for Judgment of Acquittal as to Count Three

In the July 7 Motion, Franklin seeks dismissal of count three because, "as pled (1) it does not allege a 'means of identification,' at issue in elements one and two of Section 1028A, as that term is statutorily defined in 18 U.S.C. § 1028(d)(7)," and "(2) it fails to give effect to the

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#124/126

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 07-967 PSG | Date | August 5, 2011 |
|---|---|---|---|
| Case | United States v. Terry Lee Franklin | | |

statutory language 'during and in relation to,' at issue in element three of Section 1028A, rendering Count III synonymous with Counts I and II." *July 7 Mot.* 2:6-10.  In addition, Franklin seeks a judgment of acquittal on count three because "the government has failed to prove that (1) Mr. Franklin possessed and used a 'means of identification,' as that term is statutorily defined in Section 1028[], (2) Mr. Franklin possessed and used the passport 'during and in relation to' a separate predicate felony offense, . . . (3) the passport at issue 'belonged to a real person' (much less that Mr. Franklin 'knew' that) . . . and (4) that the fraudulent passport at issue served to 'identify' Christian Bishop, as required by the definition of 'means of identification' in Section 1028(d)(7)."  None of Franklin's arguments warrant dismissal or a judgment of acquittal.

> 1. <u>The July 7 Rule 12(b)(3) Motion to Dismiss for Failure to State an Offense</u>

With respect to the July 7 Rule 12(b)(3) motion to dismiss count three, Franklin agrees that because "the motion [was] made after the close of the evidence but before a verdict [was] returned, Count III is construed liberally in favor of validity."  *July 7 Mot.* 2:28-3:1 (citing *United States v. Chesney*, 10 F.3d 641 (9th Cir. 1993)).[6]

> i. <u>"Means of Identification"</u>

Franklin maintains that he is entitled to dismissal of count three because, first, the Indictment does not allege a "means of identification," as defined in the aggravated identity theft statute.  The aggravated identity theft statute reads, in relevant part:

> (a)(1) In general.  Whoever, during and in relation to any felony violation enumerated in subsection (c) [the predicate offenses], knowingly transfers, possesses, or uses, without lawful authority, *a means of identification* of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

---

[6] At the hearing, Franklin argued that given the timing of the *July 6* Motion the Indictment need not be construed liberally.  This comports with the arguments in Franklin's July 6 Motion, but in no way changes Franklin's stated position that the Indictment should be construed liberally for purposes of the *July 7* Motion.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#124/126

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 07-967 PSG | Date | August 5, 2011 |
|---|---|---|---|
| Case | United States v. Terry Lee Franklin | | |

(2) Terrorism offense. Whoever, during and in relation to any felony violation enumerated in section 2332b(g)(5)(B), knowingly transfers, possesses, or uses, without lawful authority, *a means of identification of another person or a false identification document* shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 5 years.

18 U.S.C. § 1028A(a)(1)-(2) (emphasis added). Franklin was charged under 18 U.S.C. § 1028A(a)(1), the section proscribing the "use, without lawful authority [of] a means of identification," "during and in relation to" any predicate offense listed in "subsection (c)." *Id.* Franklin was *not* charged under the terrorism offense provision, 18 U.S.C. § 1028A(a)(2), a section similar to § 1028A(a)(1) but which proscribes the use of a "means of identification of another person" *or* "a false identification document." *Id.* In sum, § 1028A(a)(1)—the provision under which Franklin was charged—addresses only "a means of identification," while § 1028A(a)(2) covers more and includes "false identification documents."

The aggravated identity theft statute defines both "a means of identification" and "a false identification document" as used in § 1028A. A "means of identification" is defined to mean, among other things, "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any (A) name, social security number, date of birth, official State or government issued driver's license or identification umber, alien registration number, [or] government passport number." 18 U.S.C. § 1028(d)(7). A "false identification document" is defined as "a document of a type intended or commonly accepted for the purposes of identification of individuals that (A) is not issued by or under the authority of a governmental entity or was issued under the authority of a governmental entity but was subsequently altered for purposes of deceit; and (B) appears to be issued by or under the authority of the United States Government." 18 U.S.C. § 1028(d)(4).[7]

---

[7] Though it is not dispositive of Franklin's motion, the Government is correct in pointing out that the passport found on Franklin does not meet the statutory definition of a "false identification document" as it *was* issued by the United States Government and *was not* subsequently altered. *Opp'n* 32:15-16; *see* 18 U.S.C. § 1028(d)(4) (defining a "false identification document" as a document that "is not issued by or under the authority of a governmental entity *or* was issued under the authority of a governmental entity but was subsequently altered for purposes of deceit" (emphasis added)).

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#124/126**

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 07-967 PSG | Date | August 5, 2011 |
|---|---|---|---|
| Case | United States v. Terry Lee Franklin | | |

Based on the text of § 1028A and the language in the Indictment, Franklin argues that count three should be dismissed because Franklin is charged with violating § 1028A(a)(1), the general provision, but the Indictment alleges "possession and use of a 'false identification document,'—not a 'means of identification'" which is covered by subsection (a)(2), not subsection (a)(1). *July 7 Mot.* 5:2-3. The Court does not agree that count three should be dismissed on that basis.

As previously discussed, count three of the Indictment provides: "On or about December 6, 2006 . . . defendant Terry Lee Franklin knowingly possessed and used, without lawful authority, a means of identification of another person, that is, a United States passport in the name of Christian Blair Bishop, during and in relation to [a predicate offense]." *See* Dkt. #1 (the Indictment). There is no doubt that the Indictment could have been crafted more elegantly, but that does not defeat the fact that it includes all the elements of 18 U.S.C. § 1028A(a)(1), including "a means of identification." Franklin does not contest, nor could he, that the Indictment alleges that he knowingly possessed and used the name of an actual person, Christian Blair Bishop. Instead, he argues that because Christian Blair Bishop's name was contained in a United States passport, Franklin cannot be charged under § 1028A(a)(1) as that provision omits any reference to identification documents like passports. Franklin's argument must fail.

Section 1028A(a)(1) criminalizes, among other things, the *possession* of a "means of identification," which is defined to include a person's name. *See* 18 U.S.C. §§ 1028(d)(7), 1028A(a)(1). As the Government points out, if Congress made it a crime to *possess* another person's name during and in relation to a predicate offense, it is difficult to "envision a scenario under which one would 'possess' a name . . . without actually possessing the tangible object on which [it] appear[s]." *Opp'n* 32:25-27. In other words, the name, birthday, passport number, or other "means of identification" must be contained on *something*—not merely inside a defendant's head—and in this case that something happened to be a United States passport.

Of course, the Indictment could have alleged that Franklin "possessed the name of Christian Blair Bishop," rather than the allegation that Franklin "possessed . . . a means of identification of another person, that is, a United States passport in the name of Christian Blair Bishop," but if an indictment "must state the elements of the offense charged with sufficient clarity to apprise a defendant of the charge against him . . . so that he can defend himself against the charge," *United States v. Normandeau*, 800 F.2d 953, 958 (9th Cir. 1986), it would be anomalous to take the Government to task for specifically informing Franklin of the nature of

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#124/126

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 07-967 PSG | Date | August 5, 2011 |
|---|---|---|---|
| Case | United States v. Terry Lee Franklin | | |

count three rather than generally stating that he "possessed and used the name of another." *See Pheaster*, 544 F.2d at 361 ("it is well established that an indictment need not be drafted in the most precise form possible"). Thus, count three of the indictment, liberally construed or not, alleges a "means of identification" as that term is statutorily defined.[8]

ii.    "During and in Relation to"

Franklin next argues that dismissal is warranted because the Indictment "fails to give effect to the statutory language 'during and in relation to,' rendering Count III synonymous with Courts I and II, inclusive." *July 7 Mot.* 6:9-10.  Simply put, Congress expressly allowed this precise situation.

Franklin's argument has some appeal.  As alleged in the Indictment, Franklin is charged with knowingly possessing and using, without lawful authority, a means of identification "during and in relation to" the predicate offenses charged of "willfully and knowingly us[ing] a passport issued and designed for the use of another," (count one) and "knowingly possess[ing] a United States passport . . . knowing such document to have been procured by means of a false claim and statement and by fraud." *July 7 Mot.* 6:8-7:5.  Stated another way, Franklin says that being charged with possessing a passport "during and in relation to" possessing or using a passport does not make sense. *July 7 Mot.* 8:4-8.  There are two primary flaws with Franklin's position.

First, as discussed above, count three charges Franklin with possessing and using the

---

[8] Franklin cites to two cases from outside the Ninth Circuit that do not assist his argument.  First, he cites to *United States v. Villanueva-Sotelo*, 515 F.ed 1234, 1249 (D.C. Cir. 2008), a case in which the D.C. Circuit held, pre-*Flores-Figueroa*, that a defendant must know that a "means of identification" belonged to "another person" to be convicted under 18 U.S.C. § 1028A(a)(1).  In doing so, the D.C. Circuit commented that such knowledge is not necessarily true with respect to "false identification document" charges under subsection (a)(2). *Villanueva-Sotelo*, 515 F.3d at 1249.  Next, Franklin cites to *United States v. Mitchell*, 518 F.3d 230 (4th Cir. 2008), a case out of the Fourth Circuit holding that a false driver's license used by a defendant did not support a conviction under § 1028A(a)(1) because the information on the license alone did not establish the identity of a single person.  518 F.3d at 235.  Neither case addresses the question presented here, and, if anything, *Mitchell* hurts Franklin's argument as it implies that information contained on a government-issued ID—a driver's license—can, if sufficient to identify "another person," provide the basis for a § 1028A(a)(1) charge.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#124/126

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 07-967 PSG | Date | August 5, 2011 |
|---|---|---|---|
| Case | United States v. Terry Lee Franklin | | |

name of another, as contained in a United States passport, "during and in relation to" possession of that passport, which was fraudulently procured and designed for the use of another. Thus, the charge is not simply possessing a passport while possessing a passport. Second, and most important, Congress expressly allowed this precise set of charges. To be convicted under § 1028A(a)(1) the Government must prove at least one predicate felony offense "enumerated in subsection (c)." 18 U.S.C. § 1028A(a)(1). Subsection (c) includes, as predicate offenses, felony violations of "any provision contained in chapter 75 (relating to passports and visas)." 18 U.S.C. § 1028A(c)(7). Title 18 of the United States Code, Part I, Chapter 75 includes 18 U.S.C. § 1544 and 18 U.S.C. § 1546. Thus, the statute plainly allows violations of § 1544—count one of the Indictment—and § 1546—count two of the Indictment—to act as the predicate offenses under the aggravated identity theft statute, 18 U.S.C. § 1028A(a)(1). To argue, as Franklin does, that such a scheme does not make sense or give proper meaning to § 1028A(a)(1)'s "during and in relation to" clause might persuade Congress to reconsider the laws, but cannot persuade this Court to rewrite them.

Neither of Franklin's arguments warrant dismissal of count three of the indictment. Franklin's July 7 motion to dismiss is therefore DENIED.

2.   The July 7 Rule 29 Motion for Judgment of Acquittal

According to Franklin, this Court should enter a judgment of acquittal on count three because "the government has failed to prove that (1) Mr. Franklin possessed and used a 'means of identification,' as that term is statutorily defined in Section 1028[], (2) Mr. Franklin possessed and used the passport 'during and in relation to' a separate predicate felony offense, . . . (3) the passport at issue 'belonged to a real person' (much less that Mr. Franklin 'knew' that) . . . and (4) that the fraudulent passport at issue served to 'identify' Christian Bishop, as required by the definition of 'means of identification' in Section 1028(d)(7)."

Under Federal Rule of Criminal Procedure 29, an order entering judgment of acquittal should be issued if the evidence is insufficient to sustain a conviction. *See* Fed. R. Crim. P. 29. "There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Magallon-Jimenez*, 219 F.3d 1109, 1112 (9th Cir. 2000).

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#124/126

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 07-967 PSG | Date | August 5, 2011 |
|----------|---------------|------|----------------|
| Case | United States v. Terry Lee Franklin | | |

        i.      <u>"Means of Identification"</u>

Franklin first seeks acquittal of count three because, for the reasons already discussed, "the United States passport at issue in this case is not a 'means of identification,'" under the aggravated identity theft statute, and any evidence offered by the Government "cannot[] convert the passport into a 'means of identification'". *July 7 Mot.* 9:18-21. The Court's conclusion that Franklin was properly charged under count three controls the outcome of this portion of Franklin's Rule 29 motion.

        ii.      <u>"During and in Relation to"</u>

Similarly, Franklin seeks acquittal of count three because, for the reasons already discussed, "the evidence fails to demonstrate that Mr. Franklin's possession and use of the passport on December 6, 2006 occurred 'during and in relation to' his use of the passport (Count I) and his possession of the passport (Count II)." Again, however, the Court's conclusion above that Franklin was properly charged with aggravated identity theft "during and in relation to" a predicate offense listed in 18 U.S.C. § 1028A(a)(1) controls the outcome of this portion of Franklin's Rule 29 motion.

        iii.     <u>"Belonged to a Real Person"</u>

Next, Franklin seeks acquittal because the evidence presented "fails to demonstrate that Mr. Franklin 'knew' that the means of identification 'belonged' to another real person." *July 7 Mot.* 12:23-25. To be precise, Franklin claims that the passport was issued to him, not Christian Blair Bishop, and it had been revoked by the U.S. Department of State, meaning that there was no other person to whom the passport "belonged." *July 7 Mot.* 12:27-13:11. This inventive argument relies on the Ninth Circuit's Model Jury Instruction, which recommends that a court instruct a jury that, among other things, in order to convict under § 1028A(a)(1), the government must prove that "the defendant knew that the means of identification *belonged* to a real person." *See July 7 Mot.*, Ex. B (Ninth Circuit Model 8.83) (emphasis added). This instruction was inserted after the Supreme Court's *Flores-Figueroa* decision holding that § 1028A requires the government to prove that a "means of identification" related to a real person. *Id.* (Comment to Model Instruction 8.83).

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#124/126

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 07-967 PSG | Date | August 5, 2011 |
|---|---|---|---|
| Case | United States v. Terry Lee Franklin | | |

Franklin's argument, however, misses the point.  That the passport was issued to Franklin and not Christian Blair Bishop does not speak to whether Christian Blair Bishop's name—*i.e.*, the "means of identification"—belongs to Christian Blair Bishop.  Similarily, that the passport was revoked by the United States State Department (and thus, "belongs" to no one) does not speak to whether the name "Christian Blair Bishop" belonged to "Christian Blair Bishop."  Thus, to the extent that the Government must show that a "means of identification" "belonged" to a real person, it did so here.

    iv.    "Identify" Christian Blair Bishop

Finally, Franklin maintains that a judgment of acquittal on count three is warranted because "the evidence fails to demonstrate that the fraudulent passport at issue in this case 'identified' Christian Bishop." *July 7 Mot.* 13:13-14.  Franklin cites no case in support of his position, and instead relies on the fact that the passport was "obtained illegally" via Franklin's false statements and thus does not "validly" identify anyone. *July 7 Mot.* 13:18-27.  But, there is no dispute that the name on the passport was that of Christian Blair Bishop, a real person.  And a name is clearly a means of proving identity.  *See, e.g.,* 18 U.S.C. § 1028(d)(7) (a person's "name" is a "means of identification").  Together with the fact that a passport is defined by law as "any travel document issued by competent authority showing the bearer's origin, *identity*, and nationality if any," 8 U.S.C. § 1101(a)(30) (emphasis added), it becomes even more apparent that *identity* is only one aspect of a passport, not the whole thing.  Thus, accepting Franklin's position *arguendo*, just because a passport is invalid does not mean it does not contain identifying information; it may be invalid because the nationality is different from the identity, or, as in this case, because the picture is different from the name, "a means of identification." The Government's evidence demonstrates that the passport in the name of Christian Blair Bishop reflected a means of identification that belonged to and identified Christian Blair Bishop.

With respect to Franklin's entire Rule 29 motion for judgment of acquittal as to count three, a "rational trier of fact could have found the essential elements of [count three]" when "viewing the evidence in the light most favorable to the prosecution," and, thus, "[t]here is sufficient evidence to support a conviction." *Magallon-Jimenez*, 219 F.3d at 1112.  Franklin's Rule 29 motion is DENIED.

IV.    Conclusion

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#124/126**

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 07-967 PSG | Date | August 5, 2011 |
|---|---|---|---|
| Case | United States v. Terry Lee Franklin | | |

      Based on the foregoing, the Court DENIES Franklin's July 6 motion to dismiss and DENIES Franklin's July 7 motion to dismiss and motion for judgment of acquittal as to count three of the Indictment.

      **IT IS SO ORDERED.**